**Patricia HENNESSY, Plaintiff,**

v.

**PENRIL DATACOMM NETWORKS
and Richard Burns, Defendants.**

**No. 93 C 0144.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 6, 1994.

---

Elizabeth Hubbard, John C. O'Connor, Elizabeth Hubbard, Ltd., Chicago, IL, for plaintiff.

Malcolm S. Kamin, Abramson & Fox, Chicago, IL, Ginger McGuffie, McGuffie & Handal, Vienna, VA, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This is a case of sex discrimination in violation of Title VII of the Civil Rights Act

of 1964. Before the court are various post-trial issues.

## I. INTRODUCTION

On April 19, 1994, the jury in this case returned a verdict. That verdict indicated that the jury found that, as to both defendants Penril Datacomm Networks, Inc. ("Penril Datacomm") and Richard Burns, sex was a motivating factor in their decision to terminate plaintiff Patricia Hennessy. The jury also found that plaintiff's intent to file a discrimination charge did not cause defendants to terminate plaintiff.

The jury awarded plaintiff zero dollars in compensatory damages. However, finding both defendants acted with malice or reckless indifference to plaintiff's rights, the jury awarded plaintiff $300,000 in punitive damages against Penril Datacomm and $50,000 against Richard Burns.

The parties have raised various post-trial issues to be resolved before judgment may be entered.

## II. DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT [1]

### A. Insufficiency of Evidence on Causality

Defendants' arguments here are in large part an attempt to attack the jury instructions in this case. Therefore it is at least worthwhile by way of background to review what the jury was instructed in this case and why. Plaintiff's proposed instruction 30 was given by the court. That instruction explained that to succeed on her discrimination claim plaintiff had to prove defendants intentionally discriminated against her, that is that sex was "a motivating factor" in

the decision to terminate her. 42 U.S.C. § 2000e–2(m). The plaintiff, in proffering only this direct theory of discrimination, and not proffering the McDonnell Douglas burden-shifting approach, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), opted to "walk[ ] as it were without crutches," Shager v. Upjohn Co., 913 F.2d 398, 402 (7th Cir.1990). There was direct evidence of discrimination in this case, within the standards of Troupe v. May Department Stores Co., 20 F.3d 734, 736–37 (7th Cir.1994), and so it was proper for the jury to be instructed as it was.

All of this is by way of background to the real question on this motion, which is whether the evidence was sufficient for a reasonable jury to conclude that sex or pregnancy was a motivating factor in defendants' decision to terminate plaintiff.[2] Here the analysis is guided by the Seventh Circuit's Troupe opinion, where the court instructed that evidence of discrimination can be direct, circumstantial, or both. See generally Troupe, 20 F.3d at 736–37.

The court need not catalogue the entirety of the trial, especially where, as here, defendants have not come to terms with plaintiff's catalogue of the evidence that could lead a reasonable jury to its conclusion. (See Plaintiff's Response to Defendants' Motion for Judgment Notwithstanding the Verdict at 3–4.) A jury could reasonably conclude from the evidence at trial that sex or pregnancy was a motivating factor in defendants' decision to terminate plaintiff.

In this regard, therefore, defendants' motion is denied.

### B. Insufficiency of Evidence on Malice or Reckless Indifference

Once again, defendants have failed to fully respond to the catalogue of trial evi-

---

1. Defendants' motion is more properly termed a Motion for Judgment as a Matter of Law. FED. R.CIV.P. 50. However, as the 1991 Advisory Committee Notes to Rule 50 make clear, "[i]f a motion is denominated a motion ... for judgment notwithstanding the verdict, the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law in accordance with [Rule 50]." FED. R.CIV.P. 50 advisory committee notes (1991 amendment, subdivision (a)).

2. Defendants do attempt to raise for the first time in their reply memorandum their right to assert the 42 U.S.C. § 2000e–5(g)(2)(B) affirmative defense that defendants would have taken the same action in the absence of the impermissible motivation. Defendants never proffered a jury interrogatory to that effect or objected to the omission of such an interrogatory. In fact it was defendants' interrogatory as modified, lacking a question on the affirmative defense, that went to the jury.

dence that supports the jury's finding that the defendants acted with malice or reckless disregard of plaintiff's rights. A jury could have made a reasonable inference of "lack of remorse and likelihood of future violations." *EEOC v. AIC Security Investigations, Ltd.,* 823 F.Supp. 571, 578 (N.D.Ill.1993). It is also significant that defendants did not object to a punitive damage instruction based upon insufficient evidence at trial to support such an award.

In this regard, therefore, defendants' motion is denied.[3]

### C. *Validity of Punitive Damages Award*

■ The jury in this case awarded no compensatory damages, but awarded $300,-000 in punitive damages against defendant Penril and $50,000 in punitive damages against defendant Burns. Defendants' argument here is based on the proposition that "no punitive damages may be awarded in the absence of actual damages." *By–Prod Corp. v. Armen–Berry Co.,* 668 F.2d 956, 961 (7th Cir.1982) (Illinois law). Plaintiff's dispute this proposition, but cite no contrary authority.

It is not necessary for the court to reach the broad question of whether in any case punitive damages may be proper absent compensatory damages, because the court holds that the backpay award is, *for these purposes alone,* properly thought of as compensatory damages.

The Supreme Court has recently noted that "Title VII's back pay remedy … is a 'make-whole' remedy that resembles compensatory damages in some respects." *Landgraf v. USI Film Products,* —— U.S. ——, ———————, 114 S.Ct. 1483, 1490–91, 128 L.Ed.2d 229 (1994). The back pay remedy is in some respects termed "equitable," *see id.,* —— U.S. at ——, 114 S.Ct. at 1490, but the court believes that for these purposes to cling to those categories would be overly formalistic. The safeguard in the rule (assumed to operate here) that punitive damages cannot be awarded without compensato-

ry damages, appears to be that punishment of a party is inappropriate where there has been no showing of injury to another party. Otherwise, the civil justice system would function to punish "bad" behavior, rather than to right wrongs to the extent practicable between parties. In this Title VII case, back pay is plaintiff's compensation for injury at the hands of defendants, even if the law does not call it "compensatory damages." What defendants want to do is cut out the definition of compensatory damages from Title VII and paste that definition next to the rule that compensatory damages must accompany a punitive damage award. This approach makes less sense than the plaintiff's, under which the requirement of compensatory damages is considered in its context and in light of its purposes.

Defendants' motion in this regard is denied.

### D. *Retrospective Liability*

■ Defendants have repeatedly objected to the introduction of evidence predating the November 21, 1991, effective date of the Civil Rights Act of 1991. The court has consistently overruled defendants' objection, and has articulated reasons why, so the court need not provide much more detail in response to what must be now viewed at as an effort to preserve defendants' record. Nonetheless, a brief statement of the court's reasoning here is in order.

As defendants' point out, the Supreme Court in *Landgraf* held that "[t]he new damages remedy in section 702 [of the Civil Rights Act of 1991] … is the kind of provision that does not apply to events antedating its enactment in the absence of clear congressional intent [which the court did not find]." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1506. The event here is plaintiff's termination, which occurred April 7, 1992. The wrong occurs in an employment discrimination case when the adverse employment decision "was made and communicated" to the employee. *Delaware State College v. Ricks,*

---

**3.** It is important to note that here defendants have challenged only the fact of, not the amount of, punitive damages.

449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *see also Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). So it is clear that the 1991 Act applies to the adverse employment decision—termination. Given that, it is hard to accept defendants' suggestion that the context and background provided by evidence predating that decision should not have been heard by the jury.[4] Insofar as defendants' planning was affected by passage of the 1991 Act, defendants could have avoided liability by not terminating plaintiff, as the termination occurred after the 1991 Act took effect.

Defendants' motion in this regard is denied.

## III. *PLAINTIFF'S MOTION TO ENTER ORDER ON BACKPAY DUE PLAINTIFF*

Defendants contest a number of issues in plaintiff's request for back pay relief. The court will resolve those issues, and then calculate the back pay award.

### A. *Contested Issues*

#### 1. *Agreement regarding reinstatement*

■ Defendants' first argument here actually concerns reinstatement. Defendants argue that plaintiff has reneged on an agreement at the jury instruction conference not to seek reinstatement. . Defendants mischaracterize the nature of the agreement at the instruction conference. References to reinstatement in defendants' instruction ten were deleted because of the consensus that the court, not the jury, awards reinstatement. It was therefore agreed that the instruction to the jury that they are not to award reinstatement under certain circumstances would not have served any purpose. Plaintiff never agreed to abandon her claim for reinstatement.

**4.** Nor did defendants have any suggestions in the form of jury instructions for how a jury was to approach the case under defendants' vision.

**5.** The court does not read 42 U.S.C. § 2000e–5(g)(2)(A) as precluding a back pay award here. To read this subsection as imposing the requirement that plaintiff prove but-for causation as a

#### 2. *Backpay constituting improper additur*

■ Defendants next contend that the addition of back pay to the verdict constitutes improper additur to a jury verdict that awarded no compensatory damages. Nothing in the 1991 Civil Rights Act removes back pay as a court-imposed remedy. In fact, the 1991 Act, amending the relief provision, 42 U.S.C. § 2000e–5(g), still discussed back pay as being relief ordered by the court. That being the case, there is no logical reason to regard the imposition of back pay by the court as an "additur" to the jury's award of compensatory damages.[5] In any event, this was how the jury was instructed, that "[i]n calculating damages, you should not consider any back pay that the plaintiff lost. The award of back pay, should you find defendants liable, will be calculated and determined by the court." (Plaintiff's Jury Instruction No. 32.)

The court does not view an award of back pay as an additur.

#### 3. *Affirmative defense that employer would have made same decision even absent the illegal motivation*

■ As the court has discussed in footnote two above, defendants proffered no jury interrogatory on the affirmative defense. Therefore, as plaintiff argues, it would not make sense to assume that the jury would have answered the question defendants' way had the question been asked. This ground for opposing a back pay order also fails.

#### 4. *Failure to mitigate*

■ It is defendants' burden to establish that plaintiff failed to mitigate her damages. *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir.1989). To make such a showing, defendants must prove that "(1) the plaintiff failed to exercise reasonable diligence to mit-

prerequisite to back pay would undermine the affirmative defense scheme established by 42 U.S.C. § 2000e–5(g)(2)(B), which makes clear that it is "respondent" who must "demonstrate[ ]" that the same decision would have been made even absent the illegal motivation.

igate [her] damages, and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence." *Id.*

Defendants purport to have met this burden through the testimony of Elisa Nallen, an employee of MCI Telecommunications, Inc., and Brian Barnett, president of Future Wave Communications, both prospective employers of plaintiff. When weighed against plaintiff's testimony regarding her search for employment, the court finds the testimony relied upon does not establish the affirmative defense of failure to mitigate. Defendants have not persuaded the court that these witnesses established that plaintiff "refuse[d] a job substantially equivalent to the one [she] was denied." *Ford Motor Co. v. EEOC,* 458 U.S. 219, 232, 102 S.Ct. 3057, 3066, 73 L.Ed.2d 721 (1982).

### 5. *Proper rate of interest*

In the context of a section 1981 claim, the Seventh Circuit has held that "[p]rejudgment interest ... must be an ordinary part of any award of back pay." *Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1297 (7th Cir.1987). There is no reason why the court's reasoning under section 1981—based on fundamental principles concerning the time value of money—would not apply to a Title VII back pay award. The Seventh Circuit did note in *Williamson* that there are exceptions to the rule. *See id.* at 1297–98. But defendants forward none of these exceptions, and, in any event, the court does not view any as applicable here.

What defendants do contest is the proper statutory rate of interest. Plaintiff proposes the court employ the Illinois statutory postjudgment interest rate of nine percent. *See* 735 ILCS 5/2–1303. Defendants counter that the court should apply the federal postjudgment rate as established by 28 U.S.C. § 1961, which reflects the most recent 52–week Treasury bill auction.

While the parties appear correct that there is no definitive authority here—neither the Supreme Court nor the Seventh Circuit has indicated what the rate of interest should be on Title VII back pay where it is awarded—it

is an overstatement to say that there is a complete absence of authority. In *EEOC v. O'Grady,* 857 F.2d 383, 391–92 (7th Cir.1988), the Seventh Circuit made clear in an Age Discrimination in Employment Act case that the rate of prejudgment interest on a back pay award is a matter of the court's discretion. Neither party attempts to persuade which way that discretion should go, instead attempting to cling to either inapplicable (in plaintiff's case) or non-binding (in defendants' case) authority in an attempt to establish that one rate or another is mandated, which quite simply is not the case.

The common and accepted federal postjudgment rate should serve to make the plaintiff here whole, and the court finds no reason to apply the Illinois state statutory rate where another readily available devise will accomplish that goal. To avoid issues related to this rate being a fluctuating figure, based as it is on the latest 52–week Treasury bill auction, the court will use 4.55%, the rate in effect on the date of plaintiff's termination, as the rate throughout the calculation. The rate fairly steadily declined over the ensuing period, but since the measure chosen is so conservative to begin with, the court views the 4.55% rate as still fair.

### B. *Calculation of Back Pay Award*
#### 1. *Amounts of Straight Back Pay*

Defendants do not contest the accuracy of plaintiff's back pay figures. The court therefore adopts those figures, and before interest awards back pay as follows:

1992: $42,807.78
1993: $69,000.00
1994: $20,192.31

Total lost back pay: $132,000.09

#### 2. *The Addition of Interest*

While defendants did contest plaintiff's chosen interest rate, they did not challenge plaintiff's general approach to calculating interest. What plaintiff did to calculate interest was take her back pay figures for each year, starting with 1992, and multiply them by 9%. For the subsequent year, she added that year's back pay to the interest-adjusted figure for the previous year, and

multiplied that total figure by 9% to arrive at that year's grand total figure.

This approach is reasonable and, in any event, defendants did not object to it. There is one exception, however. During 1992, the first year of back pay, and 1994, the last year of back pay, plaintiff made no allowance for the fact that the back pay accrued for substantially less than the full year. Plaintiff's calculation, therefore, would grant a full year's interest on less than a full year of indebtedness, which would be a severe windfall. The court will therefore make adjustments in plaintiff's approach accordingly. The calculations are as follows:

1992 year: Back pay accrued = $42,807.78
Annualized interest on $42,807.78 = $1,947.75
Adjusted interest figure to reflect less than full year (approximately 9 months) of accrual = $1460.81 6
Total 1992 figure = 44,268.59

1993 year: Back pay accrued = $69,000
Plus carry-over from 1992 = $113,268.59
Interest accrued = $5,153.72
Total 1993 figure = $118,422.31

1994 year: Back pay accrued = $20,192.31
Plus carry-over from 1993 = $138,614.62
Annualized interest on $138,614.62 = $6,306.97
Adjusted interest figure to reflect less than full year (approximately 3 months) = $1,576.74
Total 1994 figure = $140,191.36

Therefore, the total back pay figure including interest is $140,191.36.

## IV. PLAINTIFF'S MOTION TO SET STATUTORY CAPS ON PUNITIVE DAMAGES

As explained above, the jury awarded plaintiff $300,000 in punitive damages against defendant Penril Datacomm and $50,000 in punitive damages against defendant Richard Burns. Plaintiff, aware of the statutory cap on damages in 42 U.S.C. § 1981a(b)(3), seeks to set the statutory cap for defendant Penril Datacomm at $200,000, and leave the award against defendant Burns at $50,000. Defendant raises two issues in opposition: (1) whether defendant Burns should be liable for anything; and (2) whether defendant Penril Datacomm should instead be liable only for $100,000, an issue the outcome of which depends on whether Penril Datacomm had few-

er than or more than 200 employees during the relevant time period.

### A. Liability of defendant Richard Burns

 This court has recently addressed the issue of individual supervisor liability. See Pacourek v. Inland Steel Co., 858 F.Supp 1393, 1404–1405 (N.D.Ill.1994) (Memorandum Opinion and Order). As explained in Pacourek, this court sides with the majority of judges in this district, holding that Title VII does not provide for supervisor liability. That holding applies equally here, and in this regard plaintiff's motion is denied. Defendant Burns is dismissed as a party defendant in this case, and the jury verdict against said defendant in the amount of $50,000 is set aside.

### B. Statutory Cap on Damages

The next issue is whether the punitive damage award against Penril Datacomm is to be capped at $100,000 or $200,000, a determination that turns on whether the company has fewer than 200 employees or 200 or more employees.

 Initially, the court notes that it can be a matter of no great controversy that the determination is for the court to make. The question is specifically shielded from the jury by statute, so it would have been nonsense to ask the jury to make the determination.

 What the parties have primarily focused on is plaintiff's request for the court to take judicial notice of the company's relevant Securities and Exchange Commission Form 10–K, which, plaintiff argues, places the number of employees of defendant well over 200 during the applicable period. The court is left with the evidence on the issue from trial. The only credible testimony on this point is that of Deborah Van Coutren, Penril Datacomm's Director of Employee Services. By plaintiff's own account, Ms. Van Coutren tes-

**6.** The court is aware there is another leap here. Plaintiff is earning interest for the full year on an amount of money that is more accurately thought of as an income stream. Again, with the conservative rate chosen, the court still feels confident that the calculation employed serves to make whole the plaintiff. And, in any event, although this approach permeated plaintiff's calculations, defendants never objected.

tified that the company had approximately 187 employees in April 1992. Any suggestion that there might have been more than 200 employees appears to have been pure speculation.

The court holds the $100,000 statutory cap is in place, and reduces the punitive damage award against Penril Datacomm to that amount.

## V. *REINSTATEMENT*

Plaintiff's request for reinstatement is unopposed by Penril Datacomm, except on the issue of the attorneys' agreement, which was discussed above. That remedy being allowed under Title VII, 42 U.S.C. § 2000e–5(g)(1), and the court being pointed to no special circumstances warranting refusal of the remedy, reinstatement is awarded here and will be a part of the judgment.

## *CONCLUSION*

Defendants' Motion for Judgment Notwithstanding the Verdict is denied. Plaintiff's Motion to Order Back Pay Due Plaintiff is granted in part and denied in part. Plaintiff's Motion to Set Statutory Cap on Damages is granted in part and denied in part. Defendant Richard Burns is dismissed as a party defendant in this case, and the jury verdict against said defendant in the amount of $50,000 is set aside. Judgment entered on behalf of plaintiff Patricia Hennessy and against defendant Penril Datacomm Networks, Inc., in the amount of $240,191.36, representing back pay, interest thereon, and punitive damages. Defendant Penril Datacomm Networks, Inc., is ordered to reinstate plaintiff, in accord with applicable law, at the earliest practical date.