Patricia A. KEDRA

v.

NAZARETH HOSPITAL

Civ. A. No. 93–6125.

United States District Court,
E.D. Pennsylvania.

July 7, 1994.

Alan B. Epstein, Jablon, Epstein and Wolf, Paul J. Drucker, Paul J. Drucker, P.C., Philadelphia, PA, for plaintiff.

Michael F. Kraemer, White & Williams, Philadelphia, PA, for defendant.

## MEMORANDUM

DALZELL, District Judge.

Defendant Nazareth Hospital has filed a motion for partial summary judgment on Counts II and IV of plaintiff's Amended Complaint, which allege violations of the Pennsylvania Human Relations Act ("PHRA" or the "Act"). The Hospital asserts that Kedra did not exhaust the administrative remedies available to her under the PHRA. For the following reasons, we will deny defendant's motion.

### Procedural History

Plaintiff Patricia Kedra filed her seven-count complaint on November 18, 1993. Counts II and IV of her Amended Complaint allege violations of § 955 of the Pennsylvania Human Relations Act.[1] 43 Pa.Stat.Ann. §§ 951, et seq. (Purdons 1991 & Supp.1993). Kedra alleges that Nazareth Hospital, among other things, terminated her employment and opposed approval of her unemployment compensation benefits because she: (1) is disabled due to a learning disability and speech impediment; (2) filed a disability discrimination complaint in 1986; and (3) has attempted to enforce the settlement agreement which arose from the 1986 complaint. See Plaintiff's Factual Allegations in Amended Complaint.

### Factual Background[2]

Kedra suffers from learning disabilities and a speech impediment. Nazareth Hospital initially employed her in 1974 to work in the Laundry Department. She worked in that Department for twelve years, when she was discharged allegedly without warning.

Kedra filed a charge of discrimination against the Hospital, which a March, 1986, Settlement Agreement resolved. Under this agreement, Kedra was rehired as a part-time dietary aide. In 1989, after being passed over for promotion to a full-time position, Kedra began to claim that she should be promoted to a full-time position as Nazareth Hospital allegedly promised in the Settlement Agreement. Kedra alleges that her actions caused the Hospital to issue baseless written reprimands and to treat her differently than other employees.

In January of 1992, Nazareth Hospital placed Kedra on three months "probation" allegedly for poor performance. On April 15, 1992, the Hospital discharged Kedra based on "wilful misconduct." Despite the Hospital's opposition and appeals, the Pennsylvania Office of Employment Security granted unemployment compensation benefits to Kedra.

On September 1, 1992, Kedra filed a charge of discrimination with the Philadelphia Commission on Human Relations ("PhilaCHR")[3] and alleged that the Hospital re-

---

**1.** On December 23, 1993, the Hospital filed a motion to dismiss Counts I and III, which we granted in part and denied in part. On April 7, 1994, Kedra filed a motion to amend her complaint to add a count alleging a violation of the Rehabilitation Act of 1973, 29 U.S.C § 701, et seq., which we granted as unopposed. On April 20, 1994, Kedra filed her Amended Complaint, which added Count VIII, which asserts a violation of the Rehabilitation Act, 29 U.S.C. § 794.

**2.** The facts contained in this section are as Kedra asserts them because all factual disputes and doubts must be resolved, and inferences drawn, in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

**3.** The Pennsylvania Human Relations Commission ("Pa.HRC") is a state agency created pursuant to the PHRA. The Philadelphia Commission on Human Relations ("PhilaCHR") is a municipal agency created pursuant to the Philadelphia Municipal Code and § 962.1 of the PHRA.

taliated against her for filing her complaint with the PhilaCHR in 1986. The United States Equal Employment Opportunity Commission ("EEOC") was notified of the complaint pursuant to a worksharing agreement. Under the worksharing agreement, a complaint filed with PhilaCHR is deemed filed with the EEOC.

PhilaCHR initially investigated Kedra's complaint and, on October 6, 1993, found the "Charge Not Substantiated." On October 26, 1993, the case was sent to the EEOC for review. The EEOC issued a right to sue letter on January 31, 1994, for lack of jurisdiction.[4]

*Discussion*

■ A plaintiff must exhaust the administrative remedies provided under the Pennsylvania Act before commencing suit for wrongful discharge of employment in violation of the Act. *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917, 919 (1989). The PHRA created the Pennsylvania Human Relations Commission to consider complaints brought under that statute. *See* 43 Pa.Stat. Ann. §§ 956, 957(f).

The facts necessary to determine this motion for partial summary judgment are undisputed. Kedra did not herself file a separate charge with the Pennsylvania Human Relations Commission. Kedra argues that because of the worksharing agreement between the EEOC and the Pa.HRC, the filing of her charge with the EEOC, through the Philadelphia Commission on Human Relations, should be deemed a filing "simultaneously and automatically with the PHRC." Plaintiff's Response, p. 7.

Nazareth Hospital claims that the Pennsylvania Human Relations Commission is the only agency which administers allegations of *violations* of the Pennsylvania Human Relations Act. It argues that Kedra's filing of a complaint with the Philadelphia Commission

on Human Relations does not constitute a filing with the Pa.HRC. The Hospital further argues that because the EEOC did not refer the charge to the Pennsylvania Human Relations Commission, the filing with the EEOC could not constitute a filing with the Pa.HRC. In addition, the Hospital asserts that the worksharing agreement between the EEOC and the Pennsylvania Human Relations Commission was not in effect for disability-based discrimination when Kedra filed her complaint.[5] Thus, the Hospital concludes that it is entitled to summary judgment because Kedra did not exhaust her administrative remedies in the Commonwealth and, therefore, is barred from bringing her PHRA claims (Counts II and IV of the Amended Complaint) in any court.

The parties have expended much time and energy, including the submission of supplementary briefs at our request, arguing whether the worksharing agreement between the EEOC and Pa.HRC required the EEOC to file Kedra's complaint with the Pa.HRC. Upon further review of the Pennsylvania Human Relations Act, however, we find that we need not reach this issue. Instead, we must determine whether filing a charge with the Philadelphia Commission on Human Relations is tantamount to a filing with the Pennsylvania Human Relations Commission.

The Pennsylvania Act contemplates the creation of local human relations commissions with similar powers and duties to that of the Pa.HRC. 43 Pa.Stat.Ann. § 962.1 (Purdons 1991). The Act declares that local human relations commissions (like PhilaCHR) "shall notify the Pennsylvania Human Relations Commission of complaints received involving discriminatory acts within that [the local commission's] jurisdiction." *Id.* at § 962.1(e). Section 959(b)(1) of the Act *requires* the Pa.HRC to investigate "[a]fter the filing of any complaint, or *whenever*

---

4. Although this suit was commenced prior to the issuance of an EEOC right to sue letter, we allowed the case to continue for reasons of judicial economy. We saw no point in dismissing plaintiff's complaint only to have her file a new action alleging the same violations when the right to sue letter was inevitably issued, as it was a few weeks after the Hospital filed its motion to dismiss.

5. Worksharing agreements are entered into between government agencies and usually provide that each agency will investigate specified types of complaints. The agencies typically agree that service of process on one of them is sufficient service on both of them.

there is reason to believe that an unlawful discriminatory practice has been committed...." *Id.* at § 959(b)(1) (emphasis added). Pennsylvania's General Assembly thus intended that a filing with a local human relations commission would result in an investigation by the state agency.

Kedra filed her complaint with the Philadelphia Commission on Human Relations in September of 1992. The Pa.HRC did not conduct an investigation because PhilaCHR did not notify it of Kedra's complaint. PhilaCHR did, however, conduct its own investigation and found Kedra's "Charge Not Substantiated."

Prior to 1991, the Act did not provide for a local commission's investigation in lieu of an investigation by the Pa.HRC. The General Assembly may have been concerned about the expertise, or lack of it, of local commissions in the employment discrimination field. *See, e.g., Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917, 919 (1989) (legislature intended Pa.HRC to bring greater expertise and efficiency than courts in handling discrimination cases); *Commonwealth, Human Relations Commission v. Feeser,* 469 Pa. 173, 364 A.2d 1324, 1327 n. 10 (1976) (Pa.HRC possesses particular expertise in the area of unlawful discrimination that courts do not possess); *Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232, 419 A.2d 431, 455 (1980) (same). In 1991, however, the Pennsylvania General Assembly recognized that local commissions do possess sufficient expertise to investigate employment discrimination complaints when it amended § 957(n) to allow the Pa.HRC, at its discretion, to enter into worksharing agreements with local commissions. 43 Pa. Stat.Ann. § 957(n) (Purdons Supp.1993).

The EEOC also recognizes the expertise of PhilaCHR, and has agreed to accord "sub-stantial weight to the [PhilaCHR] final finding and order." *See* Worksharing Agreement Between PhilaCHR and EEOC for Fiscal Year 1994, at § V, ¶ B. It is undisputed that the EEOC had a similar agreement with PhilaCHR in 1992, the time Kedra's complaint was filed and investigated.

In view of the Philadelphia agency's statutory obligation to notify Pa.HRC of complaints filed with it, and the Pa.HRC's statutory obligation to investigate those reported complaints, as well as the recognition of both the Pennsylvania General Assembly and the EEOC that local commissions do have sufficient expertise to investigate complaints of employment discrimination as defined by the Act, we believe that the Pennsylvania Supreme Court, if today presented with the issue, would hold that a filing with the PhilaCHR constitutes actual and sufficient compliance with the Pennsylvania Human Relations Act.[6] *See, e.g., Davis v. United States Steel Supply, Div. of United States Steel Corp.,* 581 F.2d 335, 339 (3d Cir.1978) (filing with Pittsburgh Human Relations Commission sufficient to maintain private cause of action for violation of PHRA); *Lyon v. Temple Univ. of the Commonwealth Sys. of Higher Educ.,* 543 F.Supp. 1372, 1377 (E.D.Pa.1982) (state or local administrative action by plaintiffs sufficient to exhaust administrative remedies under PHRA); *Jackson v. Good Lad Co., Inc.,* No. 93–2362, 1994 WL 156930, at *8 n. 4 (E.D.Pa. April 28, 1994) (filing with PhilaCHR may serve to exhaust administrative remedies under the PHRA) (dictum).

The Philadelphia Commission's failure to notify the Pennsylvania agency should not bar Kedra from reaching the merits of her state claims in this Court. To allow the Philadelphia agency's omission to prevent a

---

**6.** We have not overlooked the Pennsylvania Supreme Court's statement that "If the [Pennsylvania] General Assembly wished to permit the substitution of agencies in its legislative scheme, it could easily have provided for that result." *Fye v. Central Transp. Inc.,* 487 Pa. 137, 409 A.2d 2, 5 (1979). *Fye* decided whether a filing and investigation by the EEOC was substantial compliance with the Act. The Pennsylvania Supreme Court concluded that the Act did not provide for investigation by the EEOC and, therefore, the EEOC

investigation did not constitute substantial compliance. *See also Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 919 (3d Cir.1982) (PHRA procedures must be strictly followed). A filing with the Philadelphia Commission is distinguishable from a filing with the EEOC because the Pennsylvania General Assembly explicitly contemplated that complainants could file with local commissions and that the local commissions would, in turn, notify Pa.HRC of those filings.

**434**

complainant's resort to the courts would in our view be inconsistent with the General Assembly's imposition of the notification duty on the local body, not on the complainant. We therefore find that Kedra sufficiently complied with the Pennsylvania Human Relations Act by filing her complaint with the Philadelphia Commission on Human Relations, and thus may be deemed to have exhausted her administrative remedies under the PHRA.

Defendant's motion for partial summary judgment as to Counts II and IV of the Amended Complaint will be denied.