Andrew **FULLMAN**, Plaintiff,

v.

**PHILADELPHIA INTERNATIONAL AIRPORT, et al., Defendants.**

**No. CIV. A. 98–3674.**

United States District Court,
E.D. Pennsylvania.

May 10, 1999.

Andrew Fullman, Philadelphia, PA, pro se.

J. Bruce McKissock, Ingrid B. Hopkinson, McKissock & Hoffman, P.C., Philadelphia, PA, Howard Lebofsky, City of Philadelphia Law Dept., Philadelphia, PA, for Philadelphia Inter. Airport, City of Philadelphia, Dennis Bowey, Jim Lynch, Charles Isdell, Mark Gale.

James M. Penny, Jr., Todd J. Glassman, Lori M. Emrick, Obermayer, Rebmann,

Maxwell & Hippel, LLP, Philadelphia, PA, for Laidlaw Transit, Perry Vedder.

Matthew Lee Wiener, Dechart, Price & Rhoads, Philadelphia, PA, for Anthony Baselice.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. INTRODUCTION

Plaintiff, Andrew Fullman, has filed this pro se action against his former employer, Laidlaw Transit ("Laidlaw"), his former supervisor at Laidlaw, Perry Vedder ("Vedder"), the City of Philadelphia, the Philadelphia International Airport ("the Airport")[1], various employees of the Airport, including Dennis Bouey, the Director of Aviation at the Airport ("Bouey"), Jim Lynch, the Airport Operations Superintendent ("Lynch"), Charles Isdell, the First Deputy Director of Aviation ("Isdell") and Mark Gale, the Airport Operations Manager ("Gale") (collectively "Airport officials"), as well as Anthony Baselice ("Baselice"), an individual who works at the Airport for an airlines. This action arises from plaintiff's alleged wrongful termination by his employer, Laidlaw. Specifically, plaintiff claims that all defendants discriminated against him based on his race, gender, and alleged disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the American with Disabilities Act ("ADA"). In addition, plaintiff asserts, against all defendants, a violation of his constitutional rights under 42 U.S.C. § 1983, as well as pendant state claims for emotional distress, wrongful termination and defamation.

Before the Court are summary judgment motions of defendants Laidlaw and Vedder, the Airport defendants, as well as defendant Baselice. For the reasons stated below, the Court will dismiss without prejudice plaintiff's Title VII and ADA claims against defendant Laidlaw for failure to exhaust administrative remedies, and grant each defendants' motions for summary judgment on all plaintiff's remaining claims.

### II. BACKGROUND

#### A. Facts.

The following facts are not in dispute or are construed in the light most favorable to the plaintiff. Plaintiff was hired by Laidlaw to serve as a shuttle bus driver at its Airport facility on June 24, 1996, to work the overnight employee shuttle bus at the Airport. Pursuant to it contract with the Airport,[2] Laidlaw's shuttle drivers were responsible for transporting Airport employees between the various terminals and the employee parking lot.[3] During their shifts, Laidlaw drivers were required to continuously make these designated "runs" around the Airport.

In June of 1997, defendant Laidlaw terminated plaintiff after plaintiff was involved in an accident with another bus (the

---

1. The Philadelphia International Airport is a sub-division of the Department of Commerce, which is an operating department of the City of Philadelphia. As such, the Airport is not a separate legal entity from the City of Philadelphia. *See* 53 Pa.Stat.Ann. § 16257 (West 1998); *see also Regalbuto v. City of Philadelphia*, 937 F.Supp. 374, 377 (E.D.Pa.1995) (holding that departments within the City are not separate legal entities that can be sued), *aff'd* 91 F.3d 125 (3d Cir.), *cert. denied*, 519 U.S. 982, 117 S.Ct. 435, 136 L.Ed.2d 333 (1996). Thus, any claims against the Airport are duplicative of any claims asserted against the City and summary judgment will be grant-

ed as to all claims against the Airport. However, the Court will refer to the City of Philadelphia, the Airport and the Airport Officials, collectively as the "Airport Defendants".

2. Laidlaw's contract with the Airport expired on June 30, 1998 and was not renewed.

3. All drivers, including plaintiff, were members of the Teamsters Local No. 115 ("Union"). The employment relationship between the Union and Laidlaw was governed by a collective bargaining agreement between the parties.

"First Termination"). Plaintiff filed a grievance through the Union requesting reinstatement. Laidlaw agreed to reduce plaintiff's discipline to a suspension and plaintiff returned to work in late June.

In November of 1997, Vedder received a report from the Airport Operations Department that plaintiff was not making all his designated runs as required by Laidlaw policy and Laidlaw's contract with the Airport. After reviewing certain computer print-outs, which tracked all runs made by all employees, Vedder concluded that plaintiff was not making certain designated runs. In addition, after a review of plaintiff's time sheets, Vedder concluded that plaintiff had falsely indicated that he had made the runs but had not picked up any passengers when, in fact, he had skipped some runs for a bathroom break. As a result, Laidlaw terminated plaintiff (the "Second Termination") for a second time. After his Second Termination, plaintiff filed another grievance through the Union. Pursuant to the procedure in the collective bargaining contract, Vedder attended a meeting with Union representatives and plaintiff to discuss the firing. At the meeting, plaintiff alleged that he had not falsified any reports but merely recorded his bathroom breaks according to the way he and all other Laidlaw employees were trained. Laidlaw again settled the grievance by reinstating plaintiff.

In April of 1998, plaintiff was terminated for the third (the "Third Termination") and final time. It is the Third Termination that is before the Court at this time. The Third Termination was allegedly precipitated by events which occurred on March 20, 1998. During one of his runs that evening, plaintiff stopped his bus outside the American Airlines terminal, illuminated the "out of service" sign and proceeded to use the restroom. When plaintiff returned to his bus some American Airline employees, who were waiting for the bus, approached plaintiff and questioned where he had been. According to plaintiff, defendant Baselice began cursing

at plaintiff for using the bathroom and an argument ensued. Plaintiff asked his dispatcher to call the police, who arrived shortly thereafter and diffused the dispute by calling another bus to take the employees to the employee parking lot. The next day, defendant Baselice filed a written complaint about plaintiff with Laidlaw and defendant Lynch, the Airport Director of Operations.

On March 31, 1998, Vedder received a letter from Lynch, which stated that Lynch had received Baselice's complaint and requested that Vedder provide a written response regarding plaintiff's actions as soon as possible. After receiving this most recent complaint about plaintiff, Vedder suspended plaintiff pending an investigation and another meeting with the Union. Prior to that meeting, however, Lynch told Vedder that based on plaintiff's repeated misconduct and the latest altercation with the American Airline employees, the Airport would no longer permit plaintiff to work at the Airport. Immediately thereafter, Lynch had plaintiff's Airport identification badge deactivated, effectively barring plaintiff's access to the Airport.

At the meeting with the Union, Vedder explained to the Union representative that he had suspended plaintiff pending an investigation and that Laidlaw could not retain plaintiff as a shuttle bus driver because Lynch had forbidden him from working at the Airport. As a result, Laidlaw instituted the Third Termination.

After the Third Termination, plaintiff did not file a grievance within the time period provided for under the collective bargaining contract. Rather, plaintiff filed the instant action.

B. *Procedural and Administrative History.*

In December of 1997, following his Second Termination, plaintiff filed a charge of discrimination ("First Charge") with the Philadelphia Commission on Human Relations ("PhilaCHR"). In the First Charge,

plaintiff alleged that the First Termination and the Second Termination were based on gender discrimination.

After his Third Termination in April 1998, plaintiff filed a second charge of discrimination ("Second Charge") with PhilaCHR, alleging that Laidlaw fired him in retaliation for filing the First Charge. Shortly thereafter, plaintiff amended the Second Charge ("Amended Second Charge"), adding a new claim and asserting that prior to the Third Termination, he had submitted documentation to Laidlaw regarding his serious medical condition which required him to take frequent bathroom breaks. These charges are still pending before the PhilaCHR. Plaintiff has not filed any charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the Pennsylvania Human Rights Commission ("PHRC").

### C. *Plaintiff's Claims.*

Although plaintiff's complaint is not organized along separate counts against each of the defendants, it appears from the pleadings and plaintiff's deposition testimony, that plaintiff has attempted to set forth the following claims: 1) the defendants terminated plaintiff on account of his race and gender in violation of Title VII; 2) the defendants terminated plaintiff based on an alleged disability in violation of the ADA; 3) the defendants discriminated against him in violation of his constitutional rights under 42 U.S.C. § 1983; 4) the defendants terminated him in retaliation for plaintiff filing the grievance with the Union and the PhilaCHR in violation of Title VII; and 5) defendants "wrongfully terminat[ed]" plaintiff from his employment with Laidlaw without "just cause".[4]

### III. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of N. Amer., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because a non-moving party is proceeding pro se, he is not relieved of the obligation under Rule 56(e), to produce evidence that raise a genuine issue of material fact. *See Wade v. Wooten,* No. 90–2373, 1993 WL 298715, at *5–6 (E.D.Pa. July 30, 1993) (recognizing that, although all reasonable latitude must be afforded the pro se litigant, just like any other party, they are subject to the obligations of Rule 56(e)).

### IV. DISCUSSION

### A. *Title VII discrimination and ADA claims.*

 "Title VII and the ADA regulate the relationship between employers and

---

4. In addition to the wrongful termination claim, plaintiff also asserts other various state law claims including a claim of "criminal conspiracy" and emotional distress as to all defendants, and defamation against defendant Baselice.

employees. As a result, in Title VII and ADA cases, the relevant question is ... whether the defendant is the plaintiff's employer under the statute. If the defendant is an employer, as defined by the statute, he or she may be sued under Title VII or the ADA." *Doe v. William Shapiro, Esq. P.C.,* 852 F.Supp. 1246, 1253 (E.D.Pa.1994). Title VII authorizes a cause of action only against employers, employment agencies, labor organizations, and training programs, *see* 42 U.S.C. § 2000e–2, just as the ADA similarly covers only employers, employment agencies, and labor organizations, *see* 42 U.S.C. § 12111(2).

█ In the present case, plaintiff has not alleged the existence of an employment relationship with defendants Baselice or the Airport defendants. In fact, it is undisputed that Laidlaw was plaintiff's employer. At his deposition, plaintiff testified that his work schedule was controlled by Laidlaw, he received all his benefits from Laidlaw, and was hired by Laidlaw. He specifically denied working for any of the other defendants. *See* Ex. C to Vedder and Laidlaw's Mot. for Summ. J. at 10, 18 ("Pl.'s Dep."). Thus, summary judgment on the Title VII and ADA claims asserted against the Airport defendants, and Baselice, the American Airline employee, must be granted.

█ Summary judgment on plaintiff's ADA and Title VII will also be granted for defendant Vedder. The Third Circuit in *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1078 (3d Cir.1996), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997), concluded that Congress did not intend to hold individual employees liable under Title VII. While the Third Circuit has not directly ruled on whether individuals can be held liable under the ADA, the Third Circuit has noted that the ADA definitions on who can be held liable "mirror [those] of Title VII." *Sheridan v. E.I. DuPont de Nemours and Co.,* No. 94–7509, 1996 WL 36283, at *13 (3d Cir. Jan.31, 1996), *vacated on other grounds by* 100 F.3d 1061 (3d Cir.1996) (en banc). In addition, district courts in the Third Circuit, faced with the issue of whether the ADA permits individual liability, have held that individual employees cannot be held liable under the ADA. *See, e.g., Brannaka v. Bergey's, Inc.,* No. 97–6921, 1998 WL 195660, at *2 (E.D.Pa. Mar.30, 1998); *Saylor v. Ridge,* 989 F.Supp. 680, 688–89 (E.D.Pa.1998); *Lantz v. Hospital of the Univ. of Pa.,* No. 96–2671, 1996 WL 442795, at *1 (E.D.Pa. July 30, 1996); *Waring v. City of Phila.,* No. 96–cv–1805, 1996 WL 208348, at *2 (E.D.Pa. Apr. 26, 1996); *Clarke v. Whitney,* 907 F.Supp. 893, 895 (E.D.Pa.1995).

The evidence shows that defendant Vedder is an employee of Laidlaw. To the extent that plaintiff is asserting individual liability against Vedder under Title VII and the ADA, summary judgment will be granted for Vedder on those claims.[5]

The only defendant against which plaintiff potentially could proceed on his Title VII and ADA claims is his former employer, Laidlaw. However, plaintiff's ADA and Title VII claims will be dismissed without prejudice, for failure to exhaust administrative remedies.[6]

---

5. In addition, to the extent that plaintiff has asserted a discrimination claim against Vedder in his individual capacity under the PHRA, summary judgment will also be granted on this claim. A court may not hold an employee individually liable under the PHRA unless the plaintiff asserts and proves that the employee actively "aided, abetted or incited" the employer's discrimination. *See Dici v. Pennsylvania,* 91 F.3d 542, 552 (3d Cir.1996). Plaintiff has failed to offer any evidence on this issue.

6. Although the pending motion is a motion for summary judgment, the Court will treat the motion as a Rule 12(b)(6) motion. *See Robinson v. Dalton,* 107 F.3d 1018, 1022 (3d Cir.1997) (concluding that a motion to dismiss a Title VII suit for failure to exhaust the EEOC process should be treated as a Rule 12(b)(6) motion). In light of this standard, the Court has not considered matters outside of plaintiff's complaint.

**442**

■ Prior to filing a lawsuit under Title VII or the ADA [7], a plaintiff must file a charge of discrimination with the EEOC and receive a right to sue letter before filing a complaint in federal court. *See* 42 U.S.C. § 2000e–5(e)(1), (f)(1); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). As the Third Circuit has explained, "[t]he purpose of requiring an aggrieved party to first resort to the EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977). Defendant Laidlaw argues that plaintiff cannot now sue in federal court because plaintiff has failed to file a charge with the EEOC and has not received a right to sue letter. Plaintiff, however, has filed charges with the Philadelphia Commission on Human Relations (PhilaCHR), an agency of the City of Philadelphia.

Courts within this district have concluded that a charge of discrimination filed with PhilaCHR is "deemed filed with the EEOC." *Kedra v. Nazareth Hosp.*, 857 F.Supp. 430, 431 (E.D.Pa.1994); *see also Holmes v. Pizza Hut of Am., Inc.*, No. 97–4967, 1998 WL 564433, at *3 (E.D.Pa. Aug.31, 1998); *Larmore v. RCP/JAS, Inc.*, No. 97–5330, 1998 WL 372647, at *3 (E.D.Pa. May 19, 1998). In *Kedra*, the court was presented with evidence that the EEOC and PhilaCHR had entered into a "work-sharing agreement" which provided that notice would be given to the EEOC when a complaint was filed with PhilaCHR and visa versa. *Kedra*, 857 F.Supp. at 432–33. The work-sharing agreement further stated that the EEOC recognized the expertise of the PhilaCHR in handling discrimination cases, and had agreed to accord "substantial weight to the [PhilaCHR] final finding and order." *Id.* at 433. As a result, the court concluded that a charge filed with PhilaCHR is also filed with EEOC. *Id.* at 432.

■ Assuming, without deciding, that plaintiff's charges of discrimination filed with the PhilaCHR are deemed filed with the EEOC, and that a work sharing agreement was in place between the EEOC and PhilaCHR at the time of plaintiff's filing,[8] mere filing with the PhilaCHR does not satisfy the statutory requirement that plaintiff exhaust administrative remedies. Rather, after filing with the appropriate administrative agency, in this case the PhilaCHR, a plaintiff must await the agency's determination and issuance of a right to sue letter before filing suit in federal court. *See* 42 U.S.C. § 2000e–5(f); *see also Reddinger v. Hospital Central Services*, 4 F.Supp.2d 405, 409 (E.D.Pa.1998) ("To properly sue an employer under the ADA, a plaintiff must first file a charge of discrimination with the [EEOC] and receive a right to sue letter.").

■ Congress articulated two reasons why the administrative agency must be given an opportunity to conduct an investigation before a plaintiff is allowed to sue in federal court: 1)"[a]dministrative tribunals are better equipped to handle the complicated issues involved in employment discrimination cases" and 2) "the sorting out of the complexities surrounding employment discrimination can give rise to enormous expenditure of judicial resources in already heavily overburdened Federal district courts." *Moteles v. University of Pa.*, 730 F.2d 913, 917 (3d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984). Specifically, Congress

---

7. A party who brings an employment discrimination claim under the ADA must follow the administrative procedures set forth in Title VII, 42 U.S.C. § 2000e–5. *See* 42 U.S.C. § 12117(a).

8. As discussed in *Kedra,* as late as 1994, a work sharing agreement existed between the EEOC and PhilaCHR. For the purposes of this decision, the Court will assume such an agreement is still in place.

has provided that only after the investigative process has concluded and the administrative agency has decided not to file an action nor has settled the matter, and the plaintiff is notified by way of a right to sue letter or similar document, may plaintiff proceed in federal court. *See* 42 U.S.C. § 2000e–5(f)(1).

From the face of plaintiff's complaint, this Court cannot establish whether plaintiff has exhausted his administrative remedies. Nor is there any evidence of record that PhilaCHR completed its investigation and decided to prosecute the case or, on the other hand, issued a right to sue letter to plaintiff. Thus, the Title VII and ADA claims against defendant Laidlaw will be dismissed without prejudice to plaintiff to reassert his claims against Laidlaw if he can show or plead in good faith that he has exhausted the requisite administrative remedies.[9]

### B. *1983 Claims.*

In order to prevail on his § 1983 claim, plaintiff must demonstrate that: (1) a person deprived him of a constitutional right; and (2) the person who deprived him of that right acted under color of state law. *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir. 1995). "As the 'under color of state law' requirement is part of the prima facie case for § 1983, the plaintiff bears the burden of proof on that issue." *Id.* at 638. The color of state law analysis "is grounded in a basic and clear requirement, 'that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). Furthermore, "[a] private action is not converted into one under

color of state law merely by some tenuous connection to state action. The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." *Id.* (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)).

### 1. *Defendant Baselice*

The Court concludes that neither the allegations asserted by plaintiff in his complaint nor the factual claims made at his deposition, even if accepted as completely true, establish that defendant Baselice was acting under the color of state law. It is uncontroverted that Baselice is a private citizen who works for American Airlines, a company neither owned nor operated by any government agency or actor. In addition, plaintiff has presented no evidence to suggest that American Airlines performs a governmental function in flying private passengers between the Philadelphia International Airport and other location. Therefore, defendant Baselice is entitled to judgment as a matter of law on plaintiff's § 1983 claim.

### 2. *Defendants Vedder and Laidlaw.*

The record also shows that defendant Vedder is a private citizen and Laidlaw is a company that is neither owned nor operated by any government agency or actor. Nor is there any evidence that defendant Laidlaw was involved in the performance of a traditional governmental function or provided a governmental service which has been the exclusive prerogative of the state. *See Black v. Indiana Area Sch. Dist.,* 985 F.2d 707, 710 (3d Cir.1993) (concluding that state contractor and its employees are not state actors because functions performed were not "traditionally the exclusive prerogative of the State") *(citing Rendell–Baker v. Kohn,*

---

**9.** Similar to the prerequisites for filing a Title VII and ADA suit, a plaintiff must exhaust his administrative remedies available under the PHRA before filing a lawsuit. *See Schofield v. Trustees of the Univ. of Pa.,* 894 F.Supp. 194,

197 (E.D.Pa.1995). However, for the reasons articulated in Section D *infra,* the Court will decline jurisdiction to hear plaintiff's PHRA claim against Laidlaw and thus not address this issue.

457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)). Thus, defendants Vedder and Laidlaw are entitled to summary judgment because they are not state actors.

Moreover, plaintiff also asserts that Vedder, Laidlaw, and the Airport Officials conspired to deprive him of his constitutional rights. Plaintiff claims that the Airport Officials, specifically defendant Lynch, forced Laidlaw to terminate plaintiff because of his race and disability, and in retaliation for filing the previous grievances. Pl.'s Compl. ¶ 16–18; Pl.'s Dep. at 30, 38, 54, 86–97.

Conspiracy with a state actor will subject a private party to liability under § 1983, provided that the state actor played a significant role in the alleged deprivation of rights suffered by the plaintiff. *Rourke v. United States*, 744 F.Supp. 100, 104 (E.D.Pa.1988), *aff'd*, 909 F.2d 1477 (3d Cir.1990). "Agreement is the *sine qua non* of a conspiracy. As the Third Circuit has explained, to allege a civil conspiracy for purposes of § 1983, the plaintiff must aver 'a combination of two or more persons to do a criminal act, or to do an unlawful act by unlawful means or for an unlawful purpose.'" *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa.1997) (*citing Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974)). "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id.* "[Nor is it] enough to show that the private actors and the state actors might have had a common goal or acted in concert unless there is a showing that they directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." *Chicarelli v. Plymouth Garden Apart-*

*ments*, 551 F.Supp. 532, 539 (E.D.Pa.1982) (*citing Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir.1980)).

The only evidence plaintiff produced regarding the alleged conspiracy was the March 31, 1998 letter from Lynch to Vedder. In the letter, Lynch enclosed the complaint from Baselice, and asked Vedder to "provide [him] with a written letter of response as soon as possible." Ex. D to Airport Officials' Mot. for Summ. J.[10] This evidence is insufficient to show that there was an agreement or mutual understanding between Laidlaw and the Airport defendants to violate plaintiff's civil rights. As a result, summary judgment will be granted in favor of defendants Vedder and Laidlaw on plaintiff's § 1983 claim.

### 4. *Airport Defendants.*

As discussed, plaintiff has failed to produce any evidence to show that the Airport Officials conspired with Laidlaw to violated plaintiff's constitutional rights. The uncontradicted evidence shows that Laidlaw, not the Airport Officials, terminated plaintiff. Other than pointing to the letter from Lynch wrote to Vedder, plaintiff has failed to produce any evidence of a conspiracy. *See Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981) (concluding that complaint containing general allegations of conspiracy to deprive person of constitutional rights cannot withstand summary judgment). Plaintiff has not produced any evidence which shows that the Airport Officials, alone or in concert with Laidlaw, took any action which violated plaintiff's constitutional rights. Moreover, the evidence of record shows that the Airport Officials had never met, seen, nor spoken with plaintiff at any

---

10. . The entire letter reads as follows:
 TO: Perry Vedder
 FROM: Jim Lynch, Superintendent
 SUBJECT: Employee Bus Complaint
 Please find enclosed a letter from American Airlines commenting on the actions of your driver Andrew Fullman on Friday March 20, 1998. You have had problems with this driver before and I request that you provide me with a written letter of response as soon as possible.
 Thank You for your immediate attention in this matter.

time prior to this lawsuit. Thus, summary judgment will be granted.

In addition, plaintiff has failed to produce any evidence to show that the City fired plaintiff or took any action which violated his constitutional rights, pursuant to a policy or custom of the City. A municipality can be held liable under section 1983 for implementing an official policy, practice or custom " 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.' " *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir.1984) (quoting *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch*, 736 F.2d at 910. Plaintiff has failed to identify any policy or custom, and thus summary judgment in favor of the City will also be granted on plaintiff's § 1983 claim.

### C. "Wrongful Termination" and Other State Law Claims.

Having dismissed plaintiff's Title VII and ADA claims against Laidlaw for failure to exhaust state administrative remedies, and granted summary judgment on plaintiff's Title VII, ADA and § 1983 claims against all remaining defendants, the Court will exercise its discretion, pursuant to 28 U.S.C. § 1367(c), and will decline supplemental jurisdiction over plain-tiff's state law claims. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995).

### D. Plaintiff's Motion to Amend.

Plaintiff has filed a motion to amend his complaint to add new defendants and a new cause of action. Specifically, plaintiff seeks to amend the complaint to add an "unfair representation" claim against the Teamsters Local Union No. 115, John P. Morris, the Secretary–Treasurer of the Union, and Ernie Harris, a Business Agent for the Union. These allegation are against new parties and do not, as alleged, state new claims against the original defendants.[11] Since the Court has dismissed all of the claims in the original complaint as to each of the original defendants, there is nothing pending before the Court. Therefore, the Court will deny plaintiff's motion to amend as moot.[12]

---

11. Under Section 301 of the Labor Management Relations Act, a party may bring a claim against the employer, the Union or both. *See* 29 U.S.C. § 185; *Berg v. United Steel Workers of Am., Local 3733*, No. 98–308, 1998 WL 165005, at *4 (E.D.Pa. Apr.8, 1998). Plaintiff's proposed amended complaint only implicates the Union. In fact, consistent with this claim against the Union only, plaintiff testified in his deposition that he was not assert-ing a wrongful discharge claim against his employer, Laidlaw, based on the collective bargaining agreement. *See* Pl.'s Dep. at 78–79.

12. This denial is, of course, without prejudice to plaintiff's right to file an independent action against the proposed defendants in the proper forum, if warranted.