**Sameerah RICHARDS,**

v.

**FOULKE ASSOCIATES, INC., et al.**

**No. CIV. A. 00–6152.**

United States District Court,
E.D. Pennsylvania.

July 9, 2001.

Mark S. Scheffer, Pomerantz & Scheffer, Philadelphia, PA, Jessica B. Sol, Wynnewood, PA, for plaintiff.

Robert C. Nagle, Harvey, Pennington, Cabot, Griffith & Renneisen, Philadelphia, PA, for defendants.

## MEMORANDUM

O'NEILL, District Judge.

Plaintiff Sameerah Richards brought suit against Foulke Associates, Inc. and its employees Ellsworth Cropper, Yolanda Davis, Felix Arce, Al Santosusso, Anthony Campbell and Anthony Hiller alleging sexual harassment and sex based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, The Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. § 951, *et seq.*, and the Philadelphia Fair Practices Ordinance ("PFPO"), Philadelphia Code, § 9–1101 *et seq.* Before me now is defendants' motion to dismiss plaintiff's PHRA claims, and various elements of her claims under the PFPO pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

## BACKGROUND

Richards was employed by Foulke as a security guard. She alleges she was disciplined for reporting the "unwanted sexual advances directed at her by her male supervisor Cropper and her male co-workers, Hiller and Campbell." (Pl.Am. Comp. ¶ 18). She further states that "the named defendants" subjected her to unwanted conversation "having explicit sexual meaning" and physically assaulted her.[1] *Id.* ¶ 19. Richards also contends that Foulke failed to provide a policy against sexual harassment, thereby creating an

"intimidating, hostile and offensive work environment for the [p]laintiff." *Id.* ¶ 20. Further, Richards alleges Foulke impermissibly acted "with a retaliatory motive" by transferring her to a different location and decreasing her wages as a result of her opposition to Foulke's alleged unlawful practices. *Id.* ¶ 22.

Richards filed an administrative charge of discrimination with the Philadelphia Commission on Human Relations[2] on August 31, 1999, against Foulke. Richards was terminated from her position on November 9, 1999, and she filed a second charge of discrimination against Foulke with the Philadelphia Commission on November 19, 1999. Both these submissions were dual-filed with the Equal Employment Opportunity Commission and were brought against Foulke only, listing none of the individual defendants. In a letter to the Philadelphia Commission dated June 26, 1999, Richards stated: "It has been 240 days since I filed my complaint.... I hereby waive my case at the Philadelphia Commission on Human Relations to the EEOC, for the Right To Sue Letter. It is my intention to pursue this matter in court." On July 27, 2000, the Philadelphia Commission terminated its investigation of plaintiff's charges and on September 7, 2000, the EEOC issued her a right to sue letter.

On December 5, 2000, plaintiff initiated this action, and on February 26, 2001, she filed an amended complaint asserting: (1) claims against Foulke under Title VII (Count I); (2) claims against all defendants under the PHRA and under the PFPO

---

1. It is unclear whether "named defendants" refers to all the individual defendants or only to Cropper, Hiller and Campbell. While Yolanda Davis, Felix Arce and Al Santosusso are listed in plaintiff's amended complaint as having acted in a supervisory capacity as employees of Foulke, the complaint contains no specific allegations involving these defendants.

2. To avoid confusion between the Philadelphia Commission on Human Relations and the Pennsylvania Human Relations Commission, I will refer to former as the "Philadelphia Commission," and the latter by its well-known acronym, "PHRC."

(Counts II and III); and (3) state law claims against Cropper, Hiller and Campbell for assault and battery (Count IV). Richards sought compensatory and punitive damages on all counts.

On March 20, 2001 defendants Foulke, Davis, Arce, and Santosusso ("moving defendants") filed a motion to dismiss Counts II and III of plaintiff's amended complaint. The moving defendants argued that: (1) plaintiffs PHRA claim should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction due to plaintiff's failure to exhaust her administrative remedies prior to filing this suit; (2) plaintiff's PHRA and PFPO claims should be dismissed as to the individual defendants because they were not named in either of plaintiff's administrative charges; (3) punitive damages are not available under the PHRA and such claims should be dismissed with respect to the moving defendants; (4) compensatory damages for pain and suffering, emotional upset and mental anguish are not available under the PFPO; and (5) punitive damages against the moving defendants under the PFPO may not exceed $400. In her brief in opposition to defendants' motion, plaintiff conceded that her PHRA claims and punitive damages claims under the PFPO against the moving defendants should be dismissed, and that punitive damages are not available under the PFPO. (Pl's Resp. at 2).[3] Remaining before me is moving defendants' motion to dismiss plaintiff's claim under the PFPO against the individual defendants. Should some or all of plaintiff's PFPO claim survive, defendants move to dismiss any compensatory damage claims for pain and suffering under that statute.

---

3. The brief accompanying plaintiff's response did not contain page numbers and I have therefore designated the first page of plaintiff's memorandum as page "1." Since plaintiff's brief was also submitted with the pages out of order the absence of page numbers made making sense of plaintiff's response all the more difficult.

## STANDARD OF REVIEW

It is not clear whether defendants' motion is based on Rule 12(b)(1) or 12(b)(6). Defendants attempting to dismiss a claim for failure to exhaust administrative remedies should file a motion pursuant to Rule 12(b)(6), failure to state a claim upon which relief can be granted. *See Laube v. Secretary of the Air Force,* CIV. A. No. 99–1325, 1999 WL 305520, at *1 (E.D.Pa. May 12, 1999)(converting a motion to dismiss for failure to exhaust administrative remedies made pursuant to Rule 12(b)(1) into a 12(b)(6) motion).

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *See Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). In deciding the motion I must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the [non-moving party]." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A claim may be dismissed on 12(b)(6) grounds only if the plaintiff cannot demonstrate any set of facts in support of the claim that would entitle her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In order to survive a 12(b)(6) motion, plaintiff must make sufficient allegations to support her claim, but does not need to demonstrate that ultimately she will prevail on the merits. *Id.*

## DISCUSSION

To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination. 43 Pa.

Cons.Stat. §§ 959(a), 962. If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from pursuing judicial remedies. The Pennsylvania courts have strictly interpreted this requirement, and have repeatedly held that "persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act." *Vincent v. Fuller Co.,* 532 Pa. 547, 616 A.2d 969, 974 (1992). Defendants contend that PFPO claims are subject to the same exhaustion requirements as those brought under the PHRA, and plaintiff failed to exhaust her administrative remedies in two respects: (1) she voluntarily removed her claims from consideration by the Philadelphia Commission thereby removing them from consideration by the appropriate administrative agency; and (2) none of the individual defendants were named in plaintiff's original filing with the PCHR and therefore she has failed to exhaust her administrative remedies with respect to those defendants.

 It is well settled that withdrawal of one's claims prior to a determination by the proper administrative agency constitutes failure to exhaust one's remedies. *See Rivera v. United States Postal Service,* 830 F.2d 1037, 1039 (9th Cir. 1987)("To withdraw is to abandon one's claim, to fail to exhaust one's remedies.") Since plaintiff voluntarily removed her claim from consideration by the Philadelphia Commission, no agency was given an opportunity to fully investigate the merits of her claim and it therefore was never subjected to proper administrative review. The question before me then is whether the exhaustion of administrative remedies is required before commencing an action under the PFPO.

My review of Pennsylvania law reveals no Supreme Court precedent on the issue of whether an aggrieved party under the PFPO must first exhaust her administrative remedies before proceeding to court. In order to predict how the Supreme Court of Pennsylvania would resolve this question of unsettled state law, I should consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Markel v. McIndoe,* 59 F.3d 463, 473 n. 11 (3d Cir.1995).

The PFPO outlines procedures for filing complaints of unlawful employment practices with the Philadelphia Commission;[4] however section 9–1110 states that "notwithstanding ... [these] provisions ... any person aggrieved by a violation of this ordinance shall have a right of action in a court of competent jurisdiction...." Plaintiff argues that since the PFPO provides for this private right of action in court, and because the PHRA "is not exclusive on its own terms, plaintiff's PFPO claims must proceed." (Pl.'s Resp. at 3). I believe the Supreme Court of Pennsylvania would disagree. Although a private right of action is provided for in the PFPO, there is nothing in the ordinance to indicate that this right precludes exhausting administrative remedies. In other words, if the PHRA dictates that individuals utilizing the PFPO must first seek an administrative remedy, section 9–1110 merely informs them that should that agency not

---

**4.** "Any individual claiming to be aggrieved by an unlawful ... employment practice ..., may make, sign and file with the Commission a verified complaint which shall state the name and address of the person or persons alleged to have committed the unlawful practice and the particulars thereof." Philadelphia Code § 9–1107(1).

find in their favor they may pursue the matter in court.

With respect to the relationship between the PHRA and the PFPO, the court in *Hall v. Resources for Human Development, Inc.*, No. Civ. A. 99–3511, 2000 WL 288245, at *1 (E.D.Pa. Mar.7, 2000), noted that the PHRA authorized local governments to establish human relations commissions with "powers and duties similar to those . . . exercised by the Pennsylvania Human Relations Commission," Pa. Cons. Stat. 43, § 962.1(d), and that pursuant to this authority, Philadelphia County established its own commission on human relations. The Philadelphia Commission was empowered to enforce the PFPO which, like the PHRA, prohibits discrimination based on sex.[5] *See Hall*, 2000 WL 288245, at *1. After noting that the PHRA requires the exhaustion of administrative remedies before a claim may be pursued in court, the *Hall* court quoted the statute as further providing that this exhaustion requirement is "deemed to repeal or supersede . . . the provisions of any existing or hereafter adopted municipal ordinance . . . relating to discrimination because of race, . . . sex, or disability." Pa. Cons.Stat. 43, § 962(b), *Hall* 2000 WL 288245, at *2. Therefore the court in *Hall* concluded that plaintiffs asserting claims under the PFPO are barred from bringing an action in court unless they have filed a complaint with either the Pennsylvania Human Relations Commission or the Philadelphia Human Relations Commission. *Id.* Under this rationale, even if plaintiff is correct

and the PFPO does contemplate an aggrieved party directly pursuing a claim in court without first exhausting administrative remedies, the ordinance would be preempted by the exhaustion requirement contained in the PHRA.

Plaintiff responds by pointing out that the text of the PHRA relied on by the *Hall* court reads: "*nothing contained in this act shall be* deemed to repeal or supercede any of the provisions of any existing or hereafter adopted municipal ordinance," and continues "but as to acts declared unlawful by Section 5 of this Act the procedure shall, *when invoked,* be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the grievance of the complainant concerned." 43 Pa. Cons.Stat. § 962(b)(emphasis added). Plaintiff argues that the *Hall* court misread the PHRA and therefore its determination requiring exhaustion of administrative remedies for PFPO claims carries no weight, and therefore since she never "invoked" the PHRA against the individual defendants she may pursue her PFPO claim directly in court. (Pl.'s Resp. at 5). Although I agree with plaintiff that the *Hall* court appears to have misread the PHRA, I find that she was nonetheless required to exhaust her administrative remedies before pursuing her PFPO claims in court.

The Pennsylvania Supreme Court has stated that the Pennsylvania legislature, recognizing the "invidiousness and the per-

---

**5.** Section 955 of the PHRA: "Unlawful discriminatory practices—it shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . sex . . . of any individual . . . to refuse to hire or employ, or to bar or discharge from employment such individual or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment. . . .

Section 9–1103 of the PFPO: "Unlawful employment practices—It shall be an unlawful employment practice: [f]or any employer to refuse to hire, discharge, or discriminate against any person because of . . . sex . . . with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

vasiveness of the practice of discrimination," enacted the PHRA creating "a procedure and an agency specially designed and equipped to attack [the] persisting problem [of discrimination] and to provide relief to citizens who have been unjustly injured thereby." *Fye v. Central Transportation, Inc.,* 487 Pa. 137, 409 A.2d 2, 4 (1979). In *Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3rd Cir.1997), the Court of Appeals, relying on *Fye,* stated "[s]trictly interpreting the filing requirement of the PHRA allows the PHRC to use its specialized expertise to attempt to resolve discrimination claims without the parties resorting to court." "The legislature has chosen, in the PHRA, to charge an administrative agency with the jurisdiction initially to receive, investigate, conciliate, hear, and decide complaints alleging unlawful discrimination." *Pennsylvania Human Relations Commission v. Feeser,* 469 Pa. 173, 364 A.2d 1324, 1326 (1976). In *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917, 918 (1989) the Supreme Court of Pennsylvania stated its approval of the court's holding in *Householder v. Kensington Manufacturing Co.,* 360 Pa.Super. 290, 520 A.2d 461 (1987), "wherein [the court held] that, in order to assert a claim for wrongful discharge from employment which is cognizable under the Pennsylvania Human Relations Act ... an aggrieved party must utilize administrative remedies available through the PHRC before asserting a cause of action in court." The *Clay* court further stated that "[a]llowing a discharged employee to commence an action in the courts without first exhausting administrative remedies would be logically inconsistent with the legislature's having created the PHRC to function as an efficient mechanism for handling such disputes." *Id.* at 919. Similarly, in

*Lukus v. Westinghouse Electric Corporation,* 276 Pa.Super. 232, 419 A.2d 431, 455 (1980), the court stated,

> [b]y requiring a complainant first to repair to the PHRC, the Legislature ensured maximum use of the PHRC's expertise, thereby minimizing the inefficient use of judicial resources (and its attendant expense and embarrassment of the parties). In other words, the rationale of the principle of exhaustion of administrative remedies, applicable to other areas of administrative law, is also applicable to actions brought under section 962(c) of the PHRA. That rationale has been stated as follows:

> > When the Legislature has seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency. Full utilization of the expertise derived from the development of various administrative bodies would be frustrated by indiscriminate judicial intrusions into matters within the various agencies' respective domains.

*Id.,* quoting *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791, 793 (1977) (footnote omitted).

The Philadelphia Commission is a municipal agency created pursuant to the Philadelphia Municipal Code and section 962.1 of the PHRA.[6] *See Kedra v. Nazareth Hospital,* 857 F.Supp. 430, 432 n. 3 (E.D.Pa.1994). In 1991, the Pennsylvania

6. Section 962.1 authorizes the creation of local human relations commissions and requires that these local agencies notify the

PHRC of complaints involving discriminatory acts within that agency's jurisdiction.

legislature recognized that local agencies such as the Philadelphia Commission possessed sufficient expertise to investigate employment discrimination complaints when it amended the PHRA to allow the PHRC to enter into worksharing agreements with such agencies. *See id.* at 433 (holding that filing complaints with the Philadelphia Commission satisfies the PHRA's requirement calling for administrative action). Among the Philadelphia Commission's duties is the enforcement of the PFPO which, using language very similar to the PHRA,[7] renders discrimination based on sex unlawful. If moving defendants' motion is denied a sexual discrimination claim could be placed directly in court with no attempt at an initial administrative resolution.

In *Clay*, the Pennsylvania Supreme Court noted the "inadvisablility" of having courts decide discrimination cases in large part because it would allow courts having "no experience handling PHRA complaints [to] resolve the dispute, while PHRC, the agency created for this purpose by the Legislature would be denied an opportunity to hear the case." *Clay*, 559 A.2d at 919 (citations omitted). "Thus," continued the *Clay* court, "the statutory scheme would be frustrated if aggrieved parties were permitted to circumvent the PHRC by simply filing claims in court [resulting] in the very sort of burdensome, inefficient, time consuming, and expensive litigation that the PHRC was designed to avert, and would substantially undermine the proper role of the PHRC." *Id* at 919–20. Were I to allow plaintiff's PFPO claims to proceed I believe the Pennsylvania Supreme Court would find the statutory scheme estab-

lished by the PHRA to be similarly frustrated. This is particularly true in the case before me where plaintiff has asserted a claim that falls squarely within purview of the PHRC. Indeed, Count II of plaintiff's amended complaint asserted a claim against all defendants under the PHRA. This count was only withdrawn after defendants' moved to dismiss the count on the grounds that plaintiffs had failed to exhaust their administrative remedies.

The PFPO and the PHRA, and therefore the PHRC and the Philadelphia Commission, were designed to address the common problem of unlawful discrimination in Pennsylvania. I do not believe the Pennsylvania Supreme Court would interpret the PFPO to allow Philadelphia employees to circumvent the PHRA and proceed directly to court without first exhausting their administrative remedies, through either the Philadelphia Commission or the PHRC; therefore, plaintiff's claims pursuant to the PFPO will be dismissed. As they have been voluntarily withdrawn by plaintiff, her claims under the PHRA will also be dismissed.[8]

---

7. *See supra* note 5.

8. While the moving defendants did not move to have plaintiff's PFPO claim dismissed with respect to Foulke, because plaintiff's failure to exhaust prevents her from pursuing any of

her claims under the PFPO, her claims against Foulke and non-moving defendants Cropper, Campbell and Hiller pursuant to the PFPO will also be dismissed.